The next matter, number 25-1880, Eduardo Taylor versus John C. Phelan. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin? Good morning, your honors. Dane Voris on behalf of Eduardo Taylor. Before we begin, and with the court's permission, I'd like to request one minute for rebuttal. You may. Thank you, your honor. Your honors, Mr. Taylor is a 63-year-old Marine Corps veteran who has endured decades of PTSD and major depression as a result of the racial abuse he suffered from his fellow Marines. After receiving these diagnoses, Mr. Taylor asked the Board for Correction of Naval Records to upgrade his discharge to reflect the honorable service that he provided to his country. Now, we're here today because in denying Mr. Taylor's request, the Board failed to engage in the basic reasoned decision-making that the APA requires, and it failed to do so in three key respects. First, the Board failed to give Mr. Taylor's request the liberal consideration it is owed. Indeed, far from liberally considering Mr. Taylor's request, the Board openly criticized his mental health diagnoses as, quote, to his service and refused to meaningfully grapple with the evidence that Mr. Taylor submitted to both explain and mitigate the conduct that led to his discharge. Second, the Board's decision-making process was riddled with flaws, any one of which fails to withstand APA scrutiny. Specifically, the Board failed to articulate a satisfactory explanation for its action. It relied on improper factors in reaching its decision. It offered an explanation that runs counter to the evidence presented. Could you be a bit more specific? In particular, you're saying that the decision did not comply with one or several of the related memoranda. Correct, Your Honor. It would help if you could point to what specific language in one of the with what specific statement in the opinion. Certainly, and Judge Chiara, the overall gist, if you will, of the DOD memos, as we call them in our... Counsel, you're evading the question. We know very well what the overall gist of the memos is. This Court is familiar with our prior case law and the D.C. Circuit case law and other circuit case law. You were asked specifically, give us language in the opinion that was issued here, and give us language in one of those three memos that you say it conflicts with. Get to the point. Apologies, Judge Lynch and Judge Chiara. I did not mean to be evasive. I apologize for that. The CURTA memo issued in 2016 explains that liberal consideration will be given to veterans petitioning for discharge relief based in whole and part on mental health conditions, including PTSD. One of our key arguments here, Judge, is that the Board, when analyzing its entire opinion, did not provide the liberal consideration that it was owed. What do you do with the fact that it recited, acknowledged that standard as I read the decision and then explained it, went on to then explain its rationale? Because as I read those memos, they don't seem to suggest that they need to come to a particular outcome. So I'm not sure how the Board, in this instance, was not properly applying the CURTA memo. Yes, Judge Dunlap, and I'll answer that in two pieces. One is that acknowledging the existence of the memos saying that the Board is applying liberal consideration is not on its own sufficient as a number of courts that we've cited in our briefs have held. Liberal consideration is not magic words. It's a show me, don't tell me standard. And so when you look at how the Board addressed Mr. Taylor's mitigating evidence and the way in which it weighed that evidence, that's really the scepter in which you have to look at liberal consideration. So under the CURTA memo, again, referring back to that memo, what it says is that liberal consideration includes but is not limited to the following concepts. Mental health conditions, including PTSD, are often undiagnosed or diagnosed years afterwards. That's a key point, and it's a key justification for the existence of the memos, is that the Department of Defense recognized for decades they often didn't get it right. And so for the Board to take multiple diagnoses of PTSD that Mr. Taylor submitted, including from the Department of Veterans Affairs, and just brush them aside as temporally remote, that's fundamentally... Counsel, the Defense Department's own analysis of PTSD by the psychologist basically said, assuming he had PTSD, and even the Board makes that assumption, it did not account for or mitigate all of the misconduct that formed the basis for the discharge. And I believe it referred specifically both to assault and drunk driving on the base after he had been warned not to do that. So it would have been helpful if the Board had explicated its reasoning more, but I assume that's the heart of your argument, that those two things either were accounted for by PTSD and the Defense Department engaged in error in relying on its own expert or some other error? It is a key part of our argument, Judge Lynch. Before I get to the assaults and the DUI, I'll address first the statement that the Board assumed that Mr. Taylor suffered from PTSD. That is my sister's argument in her briefing on this case. But notably, that statement doesn't exist anywhere in the Board's decision. In fact, the way that the Board characterizes Mr. Taylor's diagnoses is as his contentions, as his claims, as post-service diagnoses that are temporarily remote to the service at issue here. And so when viewed in its entirety, Judge Lynch, I would disagree that the Board assumed or even credited Mr. Taylor's diagnoses. And then getting to... They do talk about the potentially mitigating factors and they find that they were insufficient to warrant this extraordinary relief. And then they refer to the two things, the assault and the driving under the influence on the base. That's correct, Judge Lynch. They refer to the potentially mitigating factors. But again, they never draw a conclusion about whether or not we have PTSD or major depression in this case. And those are key questions under the CURTA memo that the Board must analyze as part of its review of a discharge upgrade application. Does the applicant have these conditions, medical conditions, and did they exist at the time of service? The Board did not answer that question here. And it's unfair to assume... Is it terribly unusual to just assume in the petitioner's favor the existence of certain facts without making findings as to those and say, we assume that this is in his favor and then we'll weigh it. So that doesn't strike me as particularly unusual. Judge Dunlap, if the Board had done that and had assumed and said, we will assume that Mr. Taylor has these diagnoses and then continued to analyze the evidence, you really wouldn't have a problem with that. So you're looking for the magic words that we assume it can't just be a background assumption that's read in that they then engage in a weighing. They have to say those words. Is that your contention? I see my time is almost up. May I answer your question? If you could. Judge Dunlap, again, there are no magic words. We don't need the Board to say assume, but we need the Board to either credit or discredit those mental health conditions, those diagnoses, and explain itself and articulate a satisfactory explanation that the APA demands. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the government, for Phelan, please introduce himself on the record. Good morning. Nicole O'Connor for John C. Phelan. The District Court's decision should be affirmed because the Board properly exercised its broad discretion in denying Mr. Taylor's application. And I think I'll pick up right where we left off. Consistent with Section 1552 in the Department of Defense Memoranda, the Board liberally considered both whether Mr. Taylor was suffering from PTSD, excuse me, at the time of his misconduct, and whether that misconduct was mitigated by his mental health diagnosis. And we know this. I'd like to ask you a question on kind of the assumption point. Because there are several references by the Board about the temporally remote nature of the PTSD diagnosis. Why is that relevant? What work is that doing other than potentially suggesting that, contra the memos, they're not going to assume that a later in time diagnosis is valid evidence? So I understand what language the Court is referring to. And that does come at the end of the decision. And I think the Board is talking about that language in context of the conduct that was not considered to be mitigated by any mental health diagnosis. But what I think is perhaps more critical is that at no point in the Board's decision do they decline to acknowledge the diagnosis of either Dr. Dixon, who was Mr. Taylor's provider who provided a report, or Lieutenant Summers, who agreed that there was potentially evidence of PTSD at the time of his misconduct. Are we to read the CURTA memo? As in effect saying that in deciding one of these cases, you should not hold it against the person that their diagnosis came years later. That's right. And so that's what the CURTA memo says. When we then turn to the opinion, what significance would noting that the diagnosis was temporally remote and that there was no evidence that you were diagnosed with a mental health condition during service? What would that be saying about the decision other than that they put weight on the fact that it was temporally remote? I think it's not perhaps the most precise analytic decision at the end of the Board's decision. I do think that's in the context of discussing the conduct that is not attributed to PTSD. But again, in the cases in DC Circuit and the cases that are cited by my brother in his brief, in those cases in which the Court determined that there wasn't liberal consideration given to the existence of PTSD, it's because in those cases the Board disavowed or declined to acknowledge the physician's post-service diagnosis. And we have the opposite here. Throughout the decision, the Board repeatedly acknowledges both Dr. Dixon and Lieutenant Summers's acknowledgement that there is a post-service diagnosis here. And at no point does the Board disavow that diagnosis. But acknowledging that there's a post-service diagnosis doesn't move the ball forward to where it needs to go. The question is, given that post-service diagnosis, can we find that there was PTSD during service? Because if there wasn't, it couldn't explain the conduct. And so the pivotal issue seems to be whether they attribute any significance to the fact that the post-service diagnosis was post. And it seems that we agree that the Curta Memo says you don't do that, you don't attribute significance to the decision because it came later, which then hones us in on the question of this language that we've been reading that seems to suggest that they've given weight to the fact that it was post. In fact, they then go on further and say that he didn't report anything back during the time period. It seems to be some tension here. Yes, I acknowledge that, Your Honor. But I think overall, the Board nonetheless assumes that there was PTSD because it goes on to, of course, determine that the severity of his misconduct cannot be outweighed by any potential mitigating evidence. And why mention that it was temporally remote, that nothing came up when he was in during service? What work is that doing in this opinion? We have to attribute, we can't just presume that we can weight out stuff in this opinion. I think that the Board is referring there, Your Honor, to the conduct that is not to PTSD. And I agree, it's not... What language says that in that paragraph? So that final paragraph is not a model of analytic precision, and it both talks about its specific concerns with the DUI and the totaling of his car and driving in suspended status. But it also talks about the misconduct that is not attributed to the PTSD. Instead of trying to figure out what the Board meant when the language doesn't quite get us there, wouldn't it make more sense to send this back to the Board so the Board could clarify this point as to whether it was attributing significance to the fact that the diagnosis was post-service? Well, it's sort of a harmless error type of analysis, Your Honor. If the Court were to do that, we already know what the Board would determine because the Board has already assumed that the potentially mitigating factors of PTSD or major depression would not outweigh the severity of the misconduct in this case. And I think what's critical here is that this misconduct is not disputed by Mr. Taylor. He acknowledges that he engaged in the assaults. He acknowledges the driving on base in suspended status. So even if this Court were to do that, we already know how the Board would come out. Counsel, your brother... We have a question here at the standard of review. Is it extreme deference from the Court system? Your brother opened his argument by saying this is APA review, which is not extreme deference. He then made the argument in his brief that these incidents are not militarily connected and therefore the extreme deference standard does not apply here. The answer to that question might go to the discussion you've just been having with Judge Kayada. If extreme deference is owed, then one sort of fills in the blanks of the Board's decision. And one could take this language as not so much discounting the PTSD saying our experts, the lieutenant's analysis, that does say some of the other activity is possibly attributed to PTSD, raising some doubt about whether that other activity could factor into the analysis. In some ways, it's a side issue because they have focused on the assault and the drunk driving and the totaling of the car. Um, so I don't quite understand what argument you're making at this point. Understood, Judge Lynch, and I appreciate that. And the Court has it exactly correct that the government's view is that the unusual deferential application of the arbitrary compression standard applies here. And that's particularly important and appropriate in a that there has been no injustice here that warrants an upgrade from other than honorable discharge. And that's precisely the type of decision that the Board is given discretion under both the expressed language of Section 1552 and the reason why the law has developed such that courts are generally disinclined. I see that my time is up. You can finish your sentence. The courts are generally disinclined to intervene with matters of military expertise, which is exactly what we have here, where the Board has concluded that there isn't an injustice that warrants an upgrade to his record. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a one-minute rebuttal. Your Honor, Stan Borris on behalf of Eduardo Taylor. I want to address one point about unusual deference as we close. As we stated in our briefing, we do not believe that unusual deference under the APA is appropriate in this circumstance. But even if we were to assume that unusual deference applies, as my sister suggests, to all discharge upgrade applications, the DC Circuit who originated that standard. She did not say that. She said it applies in this case. She did not say it applies to all. Judge Lewis, that was my understanding of her briefing. Okay. Go ahead. Make your point. Thank you, Judge. What the DC Circuit has said is that that deference doesn't hold if the Board doesn't apply the administrative process, if its process is flawed, and if the court can't make sense of its decisions one way or the other. That's the Hasselwander versus Mahoney. Didn't we in Mahoney say that we'd apply the unusually deferential review to the determination that Mahoney did not provide substantial evidence of probable material error? So to that first point that you're saying is procedural, I'm not sure how that squares with our case law. Your Honor, I see my time is up. May I respond? Yes, Mahoney did recognize the unusual deference standard. However, in Mahoney, notably, the court also said it doesn't matter which standard we apply. In the courts that go back and articulate the nuance to the unusual deference standard, they recognize that if the decision is procedurally flawed, if the Board didn't follow the decision-making process that it's supposed to follow, and if its decision doesn't make sense one way or the other, which is what we suggest here, then it's not entitled to that deference. Thank you, Your Honor. Thank you. Thank you, counsel. That concludes the argument in this case.